**TU'ULIMA TALILI, Plaintiff**

**v.**

**FAGA WILLIAMS and SATELE UOKA MOMOSEA, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 6-89

April 19, 1990

Before REES, Associate Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendants, Afoa L.S. Lutu

On Motion for Preliminary Injunction:

Plaintiff Tu'ulima Talili is a member of the Satele family. For many years he and certain of his immediate relatives have been occupying a portion of Satele land called Tomea or To'omea. Other portions of Tomea have long been occupied by the Pili branch of the Satele family, to which belongs the present holder of the Satele title, Satele Momosea. The Pilis and the Talilis have been quarreling over Tomea for many years. *See, e.g.*, *Satele v. Faga*, 2 A.S.R. 26 (1938); *Satele Mosegi v. Momosea*, L.T. 1544-1975; *Momosea v. Talili*, L.T. 29-77; *Talili v. Foma'i*, L.T. 72-79; *Momosea Satele v. Talili*, L.T. 19-84; and *Talili v. Satele*, 4 A.S.R. 23 (1987).

5

The most recent of these disputes arose from a decision by Satele Momosea to build a house for his sister on land that had long been occupied by the Talilis. The Court reaffirmed its earlier decisions with respect to Tomea. First, we reminded the parties that "'the matai does not own the family lands for his own benefit,' but is 'a sort of trustee in whose name the family lands are held for the benefit of the family members.'" *Talili v. Satele, supra*, 4 A.S.R.2d at 24, quoting *Satele v. Faga, supra*, 2 A.S.R. at 27. We also reaffirmed the presumptive right of all family members to remain on those portions of family land currently occupied by them provided that they render service to the sa'o and otherwise behave responsibly. We noted, however, that the right of a family member to occupy a particular piece of family land is not absolute; the sa'o "can reallocate the land within the family *provided that he provides the displaced family members with some other equivalent land.*" *Talili v. Satele, supra*, 4 A.S.R.2d at 27 (emphasis added); *see Ifopo v. Vaiao*, 2 A.S.R. 472 (1949); *Tiumalo v. Lio*, 3 A.S.R. 176 (1955). We therefore ruled that Satele could build a home on land occupied by the Talilis provided that he did so only after full consultation with the Talilis and other family members affected by the transaction, and further provided that the Talilis should be compensated by the assignment of equivalent family land in place of that taken for the house. *Talili v. Satele, supra*, 4 A.S.R.2d at 28.

The Court was later informed by counsel for both parties that the consultation ordered in the 1987 *Talili* case had taken place and that the Talilis had withdrawn their objection to the building of the house. In exchange, Satele Momosea had pointed out to the Talilis the part of Tomea that would theretofore be occupied by them. From the information communicated to the Court by counsel in the 1987 case and from the testimony at the hearing on the present motion, it does not appear that the Talilis were given any additional land to replace that taken by Satele's sister's house. Their acceptance of this arrangement was presumably motivated by some combination of deference to Satele and expectation that their situation within the family would thereafter be more secure.

This expectation appears to have been unjustified. The present case arose in early 1989 when Satele Momosea once again authorized the building of a house for one of his own immediate relatives (Faga Williams is a member of the Pili clan and a first cousin of Momosea) on a part of Tomea occupied by Talili plantations. It is clear, moreover, that the proposed house site is within the very land whose assignment to

6

the Talilis was reiterated as part of the settlement that concluded the 1987 lawsuit.

The facts and the law pertaining to the current dispute appear virtually indistinguishable from those that generated the Court's 1987 decision in *Talili v. Satele*. Indeed, it is difficult to characterize the assignment to Faga otherwise than as an attempt to avoid and undo the 1987 decision and the ensuing agreement among the parties. It therefore appears that plaintiff Talili has an extremely high probability of prevailing on the merits at trial.[1]

Counsel for Satele makes two principal arguments: First, that the power of a sa'o over family land is virtually absolute, and that the many High Court precedents enforcing limits on such power are contrary and injurious to Samoan custom. Second, that any requirement that a family member whose assigned land is taken by the sa'o for family purposes must be compensated by an assignment of equivalent land, assuming *arguendo* that it was consistent with Samoan tradition, is nevertheless inconsistent with modern conditions in which an expanding population must occupy an unexpanding amount of land.[2]

---

[1] A.S.C.A. § 43.1301(j) provides that a preliminary injunction can be issued only when the Court finds a substantial likelihood that the applicant will prevail on the merits *and* that great or irreparable injury will occur before trial if a preliminary injunction does not issue. The completion of Faga's house on family land currently occupied by Talili would be likely to cause great or irreparable harm of the same sort we found in granting a preliminary injunction in 1986 pending trial of the case involving Satele's sister's house. *See Talili v. Satele*, 3 A.S.R.2d 36 (1986). Precisely because a family member living on family land does not individually own the land he occupies, his future enjoyment of the land — indeed, his whole life within the extended family — can be profoundly affected by events for which the law might afford a complete remedy to a fee simple owner. To allow the construction to go forward pending trial would put plaintiff in the untenable intra-family situation of having to insist that another family member's house be torn down. Since it would be most difficult for a Samoan family member to insist on such a thing, plaintiff's position after trial would be considerably worse than his current position, in which he merely objects to construction that has not taken place. *See id*. at 37-38. Insofar as a party in Talili's situation is substantially likely to prevail at trial on the merits, therefore, a preliminary injunction is necessary to prevent the probable judgment in his favor from being practically unenforceable.

[2] Defendants Satele and Williams also contend that plaintiff Talili, through his brother Mene at a meeting in October, apologized for having taken this matter to court and agreed that Faga's house could be built on the proposed site. Faga says he then began preparing to build the house and was surprised when Talili made the present motion for a preliminary injunction. Defendants argue that by acquiescing in the proposed construction for over three months (October 1989 to January 1990) plaintiff induced detrimental reliance

The short answer to the first contention is that the body of law to which counsel now objects has been elaborated in dozens of reported High Court opinions, including several Appellate Division opinions, spanning eighty years. *See, e.g., Mailo v. Fanene*, 1 A.S.R. 191 (1907); *American Samoa v. Iose*, 2 A.S.R. 638, 640 (1939) ("[U]nder the Samoan custom . . . . the plantation and the fruits thereof are the property of the man putting in the plantation subject to the duty of service to the matai."); *Malaea v. Fiapapalagi*, 2 A.S.R. 651 (1951); *Vaotuua Family v. Puletele*, 3 A.S.R. 145 (1955); *Tago v. Faleulu*, 3 A.S.R. 370 (1958); *Tali v. Tupeona*, 4 A.S.R. 199 (1961); *Leapaga v. Masalosalo*, 4 A.S.R. 868 (1962); *Ifopo v. Vaiao, supra; Tiumalo v. Lio, supra; Satele v. Faga, supra; Talili v. Satele, supra.* Notwithstanding the pre-eminent role of the matai in Samoan family land decisions, it was the considered judgment of the Court in all these cases that some situations do arise in which the matai's power is subject to traditional limitations in favor of other family members, and that on some occasions these limitations are enforceable in judicial proceedings.

Perhaps the most obvious occasion for such enforcement is when a matai, perhaps newly selected by the Court itself, begins an ambitious program of reallocation of family land to members of his own branch of the family at the expense of more distant relatives. Indeed, before he acquired the Satele title Momosea himself sought and received judicial protection against such an attempted reallocation of part of Tomea by the then incumbent Satele. *Satele v. Momosea*, LT No. 1544-75. Even if it were not so late in the day to argue for an unconditional and unreviewable power of the sa'o to divest family members of the land they occupy, it would seem awkward for the present defendants to make such an argument with respect to Tomea. Moreover, this summary pre-trial proceeding is hardly the appropriate vehicle for such a dramatic reversal of settled law.

---

and lost whatever right he might have had to object to construction.

Plaintiff denies ever having acquiesced in the proposed construction; he says the only apology he made in October was for being late to the meeting. This version of events is far more consistent than defendants' version with the remainder of the record before us. The certificate of irreconcilable dispute from the Office of Samoan Affairs reflects that on two occasions --- once on August 8, 1989, and again on November 7, 1989 --- plaintiff and defendant were unable to reconcile their differences and agreed to submit the matter for judicial resolution. So if defendants ever understood plaintiff to have acquiesced, they should have been disabused of that notion by November 7 at the latest. The record further reflects that defendant Williams did not actually begin construction until the end of December and that plaintiffs responded almost immediately by bringing the present motion.

The argument that overcrowding may necessitate a change in the law is more interesting. If it appeared that the assignment to Faga were even arguably explicable by reference to the absence of other suitable Satele family land, the Talilis would be hard pressed to insist on the full extent of their current holdings. On the contrary, however, the record affirmatively reflects that there is a suitable house site immediately behind the house belonging to Satele's sister which was the subject of the 1987 case. In light of this fact and of the history of the dispute over Tomea, this case seems a singularly inappropriate vehicle for a change in the general rule that a family member whose plantations are taken for family purposes must be assigned equivalent land in return.

It is the Court's fervent hope that this controversy will be amicably settled within the family --- as it appeared to have been after the 1987 trial --- rather than come to court again. Despite whatever discussions have taken place, there remain important areas in which the parties appear simply to misunderstand each other. For instance, Satele testified that the Talilis have been unwilling to render *tautua* to Satele. Plaintiff Talili, on the other hand, testified that he had attempted to render *tautua* but that it had been rejected by Satele. Relations within the family would undoubtedly be put on a stronger basis if it were made clear that the Talilis were willing to give, and Satele to accept, the full measure of traditional service owing from a branch of the family with substantial plantations on family land.

Finally, we note our concern for Faga Williams, who appears to have been innocently injected into a dispute that has been ongoing for a number of years. If Satele is sincere about finding a place on family land for Faga to build his house, some site can undoubtedly be located that will be less threatening than the present site to the peace and harmony of the family. If Satele nevertheless has his heart set on establishing Faga amidst the Talili plantations, we do not hold that he can never do so. We do hold that such a dramatic reallocation of family land could only be accomplished after strict observance of the traditional requirements of full consultation and fair compensation.

For the reasons stated, the preliminary injunction will issue. The defendants and those in concert with them are enjoined pending trial from any further construction on that part of Tomea occupied by the plantations of plaintiff Talili and his immediate relatives and from any further destruction of or interference with such plantations. Trial on the merits will be scheduled upon motion of any party at any time after the

9

passage of ninety days, during which time the parties are urged to engage in further discussions in an effort to resolve the case amicably and to restore harmony within the Satele family.

It is so ordered.